UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTY MAE SNOWDON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 2:15-cv-521-JHR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

MEMORANDUM DECISION[1]

In this Social Security Disability ("SSD") appeal, the plaintiff contends that the administrative law judge did not give proper weight to the opinions of her treating psychiatrist, counselor, and primary care physician, resulting in a reversible failure to find that her impairments met Listings 12.04, 12.06, and 12.08. I affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, Finding 1, Record at 17; that, before the date last insured, she suffered from anxiety disorder, affective disorder, and borderline personality disorder, impairments that were severe but which, considered separately or in

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 17, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 13.

combination, did not meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 17-19; that, before the date last insured, she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that she could understand, remember, and carry out simple instructions, could use judgment in making simple work-related decision, respond appropriately to co-workers, supervision, and usual work situations not involving the public, and could adapt to changes in the ordinary work setting, Finding 5, *id.* at 20; that, through the date last insured, she was unable to perform any past relevant work, Finding 6, *id.* at 25; that, considering her age (38 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.*; and that she, therefore, had not been disabled, as that term is defined in the Social Security Act, from April 6, 2007, the alleged date of onset of disability, through the date last insured, December 31, 2012, Finding 11, *id.* The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work

other than her past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing.  20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).  To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).

## I. Discussion

### A. Step 3

The plaintiff asserts that, had the administrative law judge properly weighed the opinions of Michael D. Garnett, M.D., her treating psychiatrist, those opinions "would lead to a finding of meeting Listings 12.04, 12.06, and 12.08" due to "marked impairments in activities of daily living and ability to maintain concentration, persistence and pace[.]"  Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Itemized Statement") (ECF No. 8) at 2.  I will assume *arguendo* that this brief argument is sufficient to put this issue before the court, *but see Gilks v. Astrue*, No. 1:10-cv-357-DBH, 2011 WL 2580646, at *2 n.2 (D. Me. June 28, 2011) (issues adverted to in perfunctory manner unaccompanied by developed argumentation are deemed waived).  However, it cannot carry the day.

Each of the Listings cited by the plaintiff requires more than a finding of marked impairment in the activities of daily living and ability to maintain, concentration, persistence, and

3

pace. In order to establish the existence of an affective disorder of sufficient severity to meet Listing 12.04, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing 12.04"), a claimant must also show a disturbance of mood accompanied by a full or partial manic or depressive syndrome, as well as medically-documented persistence of either a depressive syndrome, a manic syndrome, or bipolar syndrome, each of which must be characterized by certain specific symptoms, as well as certain marked restrictions and/or difficulties. Listing 12.04. The plaintiff makes no effort to show that any of the required characteristics enumerated in the first part of the Listing were present before the date last insured.

The same is true of Listing 12.06, addressing anxiety related disorders, and Listing 12.08, pertaining to personality disorders. Accordingly, the plaintiff's Step 3 argument falls short, and remand is not warranted on this basis.

### B.  Dr. Garnett

Dr. Garnett became the plaintiff's treating psychiatrist in December 2012, Record at 499, just before the plaintiff's date last insured on December 31, 2012. The plaintiff asserts that the administrative law judge "fail[ed] to give proper weight to the opinions of" Dr. Garnett, Itemized Statement at 2, by failing to give a "good reason" for rejecting his opinions. *Id*. at 5.

The administrative law judge said the following about Dr. Garnett's records and opinions:

> On December 12, 2012, the claimant was evaluated by psychiatrist Dr. Garnett. The claimant reported that her improvement following her partial hospitalization had been short-lived due to the disclosure of stressful family issues after completing the program. On mental status examination, Dr. Garnett documented a mildly anxious presentation and no labile or inappropriate responses. Dr. Garnett assessed her with a global assessment of functioning ("GAF") score of 50 but made no medication adjustments due to an upcoming six-week trip, which is not consistent with disabling psychiatric limitations. The claimant returned to Dr. Garnett on March 20, 2013. Dr. Garnett noted that the claimant had a moderate level of ruminative worrying and ruminating, a good deal of ambivalence about decision-making but was fully oriented, mildly anxious and was able to sustain attention

4

>during the encounter. All of these findings suggest an ability to work within the assigned restrictions through the date last insured.

Record at 22 (citations omitted).

>Later, the administrative law judge evaluated Dr. Garnett's opinions as follows:

>The undersigned has also considered a letter dated March 26, 2014, from Dr. Garnett responding to a letter from the claimant's representative dated January 27, 2014. In the letter, Dr. Garnett opines that the claimant has marked limitation in activities of daily living, social functioning, and concentration[,] persistence and pace due to her depression. Dr. Garnett could not be sure of the onset of the claimant's difficulties but opined that her symptomatology was present when he first saw her in December 2012. Dr. Garnett notes that the claimant has limited hygiene, social avoidance, loss of interest in virtually everything, panic attacks, and has described easy distractibility and difficulty with task completion. Dr. Garnett's opinions regarding the claimant's functionality are given little weight in the restrictions assigned. Dr. Garnett's opinion, as a treating physician, must be accorded controlling weight under some circumstances. SSR 96-2p. In this case, however, the doctor's opinion is not well supported and primarily concerns a period after the date last insured as the doctor did not start treating the claimant until December 2012. Dr. Garnett's notes, which for the majority of the time are after the date last insured, document generally normal results on mental status examination, and primarily concern family conflict and other stressors not debilitating psychiatric symptoms as described in the letter.

*Id*. at 23 (citations omitted).

The plaintiff takes issue with these conclusions, characterizing them as "simply wrong." Itemized Statement at 3. She asserts that Dr. Garnett's notes of his initial evaluation, which took place before the date last insured, are "fully consistent with his opinion, which he related to the beginning of his treatment." *Id*. She also argues that, while his notes refer to family conflict, they also describe specific psychiatric symptoms, and states without a supporting citation that normal mental status exams are "not probative of psychiatric limitations, which are better indicated by the low Global Assessment of Functioning ('GAF') of 50 indicated prior to the DLI [date last insured] (R. 342), and the description of specific psychiatric symptoms[.]" *Id.*

5

Social Security case law is contrary to the latter assertion. *See, e.g., Tripp v. Colvin*, No. 2:14-CV-80-SPM, 2015 WL 3645026, at *5 (E.D. Mo. June 10, 2015) (permissible to discount opinion of treating psychiatrist when findings in his mental status examinations were inconsistent with the severe limitations he assigned); *Henderson v. Colvin*, No. 12-cv-05316, 2014 WL 5431111, at *10 (E.D. Pa. Oct. 27, 2014) (ALJ supportably concluded that normal and negative findings in treating psychiatrist's mental status examination were inconsistent with GAF of 40 and limitations imposed in his assessment); *Whitten v. Astrue*, No. C12-5213-JLR-BAT, 2012 WL 5293019, at *4-*5 (W.D. Wash. Oct. 9, 2012) (ALJ supportably rejected examining psychologist's opinion that claimant had marked limitations in several functional categories when her mental status examination notes were inconsistent with those limitations).

Finally, the plaintiff asserts that her partial hospitalization program following a suicide attempt, from which she was discharged with a Global Assessment of Functioning ("GAF")[2] of 40 before her date last insured, was not "adequately considered" by the administrative law judge. Itemized Statement at 3. The administrative law judge noted that the plaintiff attended this program for one month, Record at 18, and that it constituted "one episode of decompensation" shortly before the date last insured. *Id*. at 20. He also stated that, during this program, the plaintiff "was stabilized and discharged in improved condition." *Id*. at 22. The mere fact that the administrative law judge did not mention a GAF of 40 assigned to the plaintiff upon her discharge from the program does not entitle her to remand. *LaFontaine v. Astrue*, No. 1:10-cv-527-JAW,

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (*e.g*., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g*., no friends, unable to keep a job)." *Id*. at 34 (boldface omitted).

2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011). Dr. Garnett assigned her a GAF of 50 one week after her discharge from the program. Record at 342. The administrative law judge's reasons for rejecting Dr. Garnett's conclusions concerning mental limitations applies as well to the GAF score that Dr. Garnett assigned to the plaintiff.

The plaintiff's argument is weakened by her failure to describe what "adequate[] consider[ation]" of these factors would be. Itemized Statement at 3. She cannot intend to argue that the administrative law judge was required to give controlling weight to Dr. Garnett's opinions, because his opinions are inconsistent with the reports of the state-agency reviewers.[3] 20 C.F.R. § 404.1527(c)(2). *Compare* Record at 498-99 (Dr. Garnett's opinion) *with id*. at 81-86 (opinions of state-agency reviewing psychologist, Thomas Knox, Ph.D.) *and id*. at 95-102 (opinions of state-agency reviewing psychologist, Peter G. Allen, Ph.D.).

Specifically, the plaintiff contends that the administrative law judge "fail[ed] to give adequate reasons for discounting" Dr. Garnett's opinions. Itemized Statement at 2. I disagree.

An administrative law judge must give good reasons for the weight that he or she assigns to the opinions of an acceptable medical source who has treated the plaintiff. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 19893-1991 (Supp. 2015) at 150. Here, the administrative law judge observed correctly that Dr. Garnett's opinion primarily addressed the plaintiff's condition after her date last insured; he only saw her once before that date, and he uses the present tense throughout his records and in the opinion letter dated March 26, 2014, on which she relies. Record at 340, 342, 498-501.

---

[3] However, at oral argument, the plaintiff's attorney asserted that, because Dr. Garnett's opinion was inconsistent with that of the state-agency psychologists and consistent with those of Ms. Zell, her counselor, and Dr. Meserve, her treating physician, the opinions of the state-agency psychologists could not constitute substantial evidence to support the administrative law judge's RFC. This position is contrary to long-standing precedent in this district, from which I see no reason to deviate in this case. *See, e.g., Enman v. Colvin*, Civil No. 2:13-cv-307-DBH, 2014 WL 5394577, at *4 (D. Me. Oct. 21, 2014).

He does say, however, that the plaintiff's "symptomatology was certainly present the first time I saw her in December 2012." *Id*. at 499. It is not unreasonable to infer that the symptomatology that Dr. Garnett found to be so limiting in March 2014 was also found by him to be similarly severe in December 2012, given the nature of his diagnoses of mental impairments, although the plaintiff's symptoms as reported by Dr. Garnett in March 2014 were considerably more serious than those he recorded in 2012 and early 2013. *Id*. at 500-01. However, as the commissioner's attorney pointed out at oral argument, symptomatology and functional limitations are two distinct concepts and should not be conflated. *See, e.g.,* 20 C.F.R. § 404.1529(c) (treating symptoms and functional limitations as different concepts, one of which causes or contributes to the other).

The question before this court, therefore, is not whether the plaintiff's impairment began before the date last insured, but rather whether the administrative law judge wrongly rejected the evidence of its severity before that date. I have already noted that the administrative law judge was entitled to credit the less-limiting opinions of the state-agency psychologists. In addition, the administrative law judge's conclusion that Dr. Garnett's limitations were inconsistent with his notes is not wrong. *See, e.g., id.* at 342 (initial office visit; no changes in medication because plaintiff was leaving in four weeks on a six- or eight-week trip); 338 (second office visit; plaintiff mildly anxious, but otherwise unremarkable mental status exam; no change in medications); 523 (09/04/13 office visit; anxiety about the same; otherwise normal mental status exam, no change in medications); 521 (10/30/13 office visit; same).

The plaintiff takes particular exception to the administrative law judge's remarks concerning her ability to "make a number of out-of-state trips including a two-month Caribbean cruise[,]" *id.* at 21, and his observation that "the nature of the travel, to warm climates[,] is in the nature of a vacation and is prolonged which suggests that the claimant is more functional than

8

asserted at hearing[,]" *id*. at 22.  The plaintiff asserts that "the record indicates that these were [with] a close friend, who provided assistance and support, and were for a therapeutic purpose." Itemized Statement at 4.  She adds that the two-month Caribbean cruise "was in fact a visit to a friend in Alabama (R. 338) which included a short cruise undertaken with the friend." *Id*. at 4-5.  Neither of the pages of the record cited by the plaintiff in connection with her multiple trips[4] mentioned in the record during the relevant time period state that those trips were prescribed by or cleared by a treating medical professional, or, in the case of the two-month stay in Alabama, included only a "short cruise."  Record at 338, 429.

The administrative law judge provided adequate reasons for assigning little weight to the work-related restrictions advocated by Dr. Garnett, and those reasons were supported by substantial evidence in the record.  Nothing further was required.

### C.  Ms. Zell

With respect to the licensed clinical professional counselor who treated the plaintiff, Sarah Scott Zell, the plaintiff makes the same arguments.  Itemized Statement at 4-6.  A critical difference in the court's analysis, however, is that Zell is not an acceptable medical source, 20 C.F.R. § 404.1513(a), and, as a result, the administrative law judge need only explain the weight given to her opinions to an extent sufficient to permit subsequent reviewers to follow his reasoning. *Baxter v. Colvin*, No. 2:13-cv-344-GZS, 2014 WL 5326238, at *5 (D. Me. Oct. 20, 2014).  The plaintiff asserts that Zell's notes "are fully consistent with her opinion[,]" citing 142 pages of the record without a pinpoint citation, *id*. at 4; that Zell was "fully aware" of the plaintiff's trips, *id*. at 5; and

---

[4] Record at 268 (4/11/13 doctor's note: "Patient says her mood has improved since going on the two-month cruise[.]"); 299 (11/13/12 doctor's note: "Patient had a very [em]powering trip to the West Coast[.]"); 386 (5/23/13 therapist's note: "Christy has 2 trips planned [with] a friend [illegible], will be taking daughter [with] her."); 429 (4/19/12 therapist's note: "Christy was able to travel out of state twice in the past year with financial + emotional support from close friends."); 433 (4/19/12 therapist's note: plaintiff "going on a two-week trip to CA next week.")

that the consulting examiner, Edward Quinn, Ph.D., did not have the benefit of Zell's "subsequent notes." *Id*. at 6.

The administrative law judge noted that the plaintiff received "consistent treatment with therapist Sarah Scott-Zell throughout the relevant period." Record at 18. Later, he noted that the "claimant began treating with Therapist Zell in April 2010[,]" and then summarized the contents of her notes. *Id*. at 22. Finally, he recounted the contents of a letter from Zell dated March 31, 2014. *Id*. at 24.

In the absence of any specification by the plaintiff of the specific entries in Zell's notes that support her position, and in the face of specific citations to those notes by the administrative law judge that support his conclusions, the plaintiff has not shown that the administrative law judge gave improper weight to Zell's opinions, nor that he failed to give adequate reasons for the weight he did give to them. To the extent that the plaintiff relies on an uncited opinion from Zell that she was not capable of employment, Itemized Statement at 4, that issue is one that is reserved to the commissioner, and the fact that the administrative late judge assigned little weight to such an opinion cannot be error. 20 C.F.R. § 404.1527(d); *Poulin v. Colvin*, No. 2:14-cv-529-JHR, 2015 WL 9473406, at *2 (D. Me. Dec. 28, 2015).

### D.  Dr. Meserve

Next, the plaintiff raises essentially the same arguments with respect to the opinion of his primary care physician, Christopher Meserve, M.D.[5] Itemized Statement at 2-6. She refers specifically only to Dr. Meserve's opinion that she was not capable of employment. *Id*. at 2, 4. As was the case with Zell, the failure of an administrative law judge to adopt a treating medical

---

[5] The itemized statement variously refers to the plaintiff's primary care physician as "Christopher Short, D.O.," Itemized Statement at 2, 4, 6, and as "Dr. Meserve," *id*. at 4. Dr. Meserve's name is on the medical records that are cited by the plaintiff.

source's opinion on an issue reserved to the commissioner cannot, standing alone, provide the basis for remand.

The plaintiff also asserts that "the Decision says that Dr. Meserve's notes do not document the asserted level of symptomatology, which again is incorrect." *Id*. at 4. This conclusory assertion is unaccompanied by any citation to the record. It may well be that Dr. Meserve's opinion on the ultimate issue "bolsters the more specific opinions of Dr. Garnett and Ms. Zell," *id.*, but the plaintiff's presentation is insufficient to justify a remand on the basis of the administrative law judge's treatment of Dr. Meserve's opinion.

### E.  Dr. Quinn

The plaintiff faults the administrative law judge for failing to "mention Dr. Quinn's statement that Plaintiff may potentially have problems with reliability, which is consistent with the treating source opinion and would be disabling." Itemized Statement at 5 (citation omitted). She cites no authority for the proposition that potential problems with reliability would render a claimant disabled. Even if that were the case, the administrative law judge was not required to adopt that opinion, and, thus, any error in failing to mention the opinion specifically can only be harmless. The opinions of the state-agency psychologist reviewers, which are inconsistent with such an opinion, even if it had been expressed in affirmative rather than conditional terms, provide sufficient evidentiary support for the implied rejection of that opinion. *See also Sheldon v. Colvin*, Civil No. 2:13-CV-315-DBH, 2014 WL 3533376, at *5 (D. Me. July 15, 2014) (opinions qualified by "may" do not always translate into specific limitations).

### F.  Credibility

Lastly, the plaintiff's itemized statement includes the following paragraph under the heading "The Decision Errs in Evaluating Credibility":

> The Decision's failure to adequately evaluate treating source opinion, misleading statements regarding Plaintiff's trips, and failure to adequately consider a hospitalization for a suicide attempt immediately prior to the DLI[] cause the evaluation of Plaintiff's credibility to be erroneous.

Itemized Statement at 6. Assuming *arguendo* that this sentence is sufficient to present the question of evaluation of the plaintiff's credibility to this court, *but see Gilks,* 2011 WL 2580646 at *2 n. 2, none of the listed issues have any bearing on the evaluation of the plaintiff's credibility. It is only the plaintiff's own testimony about the intensity, persistence, and limiting effects of her medically-determinable mental impairments that is evaluated through an assessment of her credibility. Record at 21.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 13th day of September, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge